**FILED**

UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JUN 2 1 2017

MATTHEW J. DYKMAN
CLERK

DAVID LANKFORD and
LEE ANN LANKFORD, *pro se*
    Plaintiffs,

v.

Case No. 17 CV 668 KBM/GBW

UNITED STATES DEPARTMENT OF JUSTICE
    Defendant.

## COMPLAINT

    This is an action to remedy the deprivation of due process of David Lankford and Lee Ann Lankford ("**Lankfords**") under the Fifth and Fourteenth Amendments.[1] The United States Department of Justice ("**DOJ**") has failed its mission by allowing corruption and bias in our courts to redefine due process, as established by the Constitution of the United States. When officers of the court knowingly and intentionally obstruct justice, use collusion, show bias and commit fraud on the court to corruptly influence the Courts' decisions and rulings, there is no due process and little hope for justice. Lankfords, *pro se*, in this Complaint state:

## NATURE OF THE CASE

1.    Over the past five years, Lankfords have pursued due process and justice in our courts with *prima facie*[2] evidence and by application of the rule of law in the following New Mexico cases: (i) Bankruptcy Adv Proc No 12-01139-J, where officers of the Court knowingly and intentionally suppressed and concealed evidence provided by Lankfords, while the

---

[1] The Fifth and Fourteenth Amendments to the United States Constitution contain a 'due process clause'. Due process deals with the administration of justice and thus the due process clause acts as a safeguard from arbitrary denial of life, liberty, or property by the Government outside the sanction of law.

[2] *Prima facie* "at first look," or "on its face," referring to a lawsuit or criminal prosecution in which **the evidence before trial is sufficient to prove the case unless there is substantial contradictory evidence presented at trial.** A prima facie case presented to a grand jury by the prosecution will result in an indictment (//legal-Dictionary.thefreedictionary.com)

Bankruptcy Trustee ("**Trustee**") submitted so much false information to the Court that it could not fairly adjudicate the case; (ii) District Court Appeal Case 1:14-cv-01153-RB-CG, where the Court only considered the Trustee's fabricated documents and false statements to deny the appeal as being "without merit," while disregarding Lankfords' evidence; (iii) District Court Complaint 1:15-cv-01013-JCH-LF, where the only consideration was the Trustee's immunity per the *Barton* Doctrine ("***Barton***"), with none given to her illegal acts; (iv) Judicial Complaint to Tenth Circuit Court Nos. 10-16-90025 thru 10-16-90027, where it was decided that falsifying court minutes, accepting fabricated documents as evidence, issuing fraudulent orders and being corruptly influenced to make arbitrary changes in the application of the law were acceptable practices for judges; (v) Tenth Circuit Court of Appeals USCA No. 16-2221, where the Court upheld the lower courts' defense of the officers of the court - not because they were innocent, offered rebuttal evidence or even denied committing crimes against Lankfords, but based solely on the immunity provided by *Barton*. No regard was given to the corruption, injustice or damages Lankfords have suffered as a result of the actions of the corrupt officers of the Bankruptcy Court; (vi) In addition to these cases, Lankfords attempted to reopen their Bankruptcy Adv Proc No 12-01139-J, with new evidence of judicial fraud on the court committed by officers of the court, but were again denied by the same biased judge who issued a fraudulent order allowing the Trustee to withhold material evidence and then granted the illegal summary judgments. Due process has either been redefined or has become an inconvenient and disruptive function of the court that can arbitrarily be ignored if necessary to win a judgment. The Bankruptcy Court allowed the admission of false and fabricated evidence provided by the Trustee, yet it refused to let Lankfords use the same false documents as exhibits to prove fraud on the court.

2.      The Bankruptcy Court judge exposed his collusion, bias and impartiality when he ignored Lankfords' documented proof that the Trustee and her attorneys had concealed and covered-up evidence of having used fabricated false documents, made false statements and violated existing statutes in order to avoid a trial and to win summary judgments[3] for an overstated amount. The officers of the court never admitted, denied or defended themselves against Lankfords' allegations of fraud on the court or offered any rebuttal evidence, finding that their silence, the *Barton* doctrine and their persistent failure to respond to the allegations were their best defenses.

3.      The DOJ has failed in its mission "to promote and establish justice and the appearance of justice" for Lankfords or to protect them from the cronyism, obstruction of justice, collusion, bias and corruption found in these Courts. The New Mexico Bankruptcy Court has crossed state lines into Arizona in a scheme to obtain by fraud money to which it had no right. Lankfords informed the-then Attorney General, Ms. Loretta Lynch, the US Attorney and the FBI of this corruption; but to date, the DOJ has failed to act, thus warranting the present Complaint which addresses the damages and injustice that were knowingly, willfully and deliberately inflicted upon Lankfords, who have committed no crime. These officers of the court violated existing statutes and colluded against Lankfords, while they enjoyed and flaunted their judicial immunity by ignoring and not responding to Lankfords' allegations. These Courts have proven to Lankfords that they can no longer be trusted with justice; therefore, it is only fair and reasonable for Lankfords to ask for an immediate evidentiary hearing[4] and to demand a trial by jury.

---

[3] The evidence and inferences that may be drawn from it must be construed in the light most favorable to the party opposing summary judgment. Beckham v. Safeco Insurance Co. of America, 691 F.2d 898, 902 (9th Cir.1982).
[4] The Goldberg Court held that the state **must provide a hearing before an impartial judicial officer,** the right to an attorney's help, the right to present evidence and argument orally, the chance to examine all materials that would be relied on or to confront and cross-examine adverse witnesses, or a decision limited to the record thus made and explained in an opinion.  (Goldberg v. Kelly, 397 U.S. 254 (1970)

4.      Lankfords were first victims of a Ponzi scheme and now are victims of the corrupt, biased courts in New Mexico.  Because Lankfords' are *pro se*, their allegations have been ignored and minimized by the Court, calling them "bald allegations."  The judges denied due process when they failed to consider, record or adjudicate Lankfords' *prima facie* evidence and violated Fed. R. Civ. Pr. Rule 56(a)[5] when summary judgments were unjustly and illegally granted, denying them a trial.  It appears that these Courts in the District of New Mexico are more concerned with protecting officers of the court, who have committed criminal acts, than in due process and justice for all.

5.      This Complaint is not merely about summary judgments that were overstated by a disputed $4126.75.  It is about the abuse of power and obstruction of justice by a corruptly influenced judicial system that allows officers of the court to believe they have the right to commit crimes and violate existing laws in their administration of justice, without any personal or professional consequences for their actions.

6.      Lankfords have been aggrieved and suffered damages as a result of being denied the due process guaranteed by the Constitution, and were severely penalized with overstated and illegal summary judgments.  Under color of authority and the law, the officers of the court purposefully caused or permitted Lankfords to be deprived of due process; their actions were outside the scope of any authority and contrary to the rule of law.  In response to an information request, the DOJ sent to Congress the same false statements used against Lankfords in their adversary proceeding.  If Congress cannot rely on the integrity of the DOJ to provide information that is true and correct, decisions will be made and laws passed, that could encourage corruption, circumvent due process and erode justice.  The New Mexico Courts claimed that officers of the

---

[5] Fed. R. Civ. Pr. Rule 56 (a) MOTION FOR SUMMARY JUDGMENT "… The court shall grant summary judgment if <u>the movant shows that there is no genuine dispute as to any material fact</u> and <u>the movant is entitled to judgment as a matter of law</u>. The court should state on the record the reasons for granting or denying the motion…"

court have immunity from prosecution, even from their illegal acts, per *Barton*, and are effectively above the law, and untouchable when they violate existing statutes. The DOJ and Congress are responsible for allowing these officers of the court to think and act in this manner, even though the people and the Constitution disagree.

## JURISDICTION, VENUE AND STANDING

7.     **Jurisdiction**. The jurisdiction of this Court over the subject matter of this Complaint is pursuant to 28 U.S.C. §1331 in that this claim arises under the Constitution and laws of the United States, and this Courts' superiority over the Bankruptcy Court.

8.     **Venue.** Defendant resides in this judicial district and a substantial part of the events giving rise to the claim occurred in this judicial district, so venue is proper in this district pursuant to 28 U.S.C. §1391 (a)(1), (b)(1)(2), (c)(2), (e)(1)(A)(B) and that the causes of actions alleged involve an agency of the United States acting under color of legal authority.

9.     **Standing.** Lankfords have met the Constitutional minimum three elements for standing as: (i) they were injured by the deprivation of due process which led to fraudulent and, therefore, illegal $67,404.39 summary judgments filed against them, claiming that this amount represented their net-winnings. Other injuries are court costs, legal expenses, the time and expense of being *pro se*, which has cost Lankfords the loss of their small business, the mental and physical stress they have suffered for over five years, and the lost opportunity to get a VA refinance of their home at a time when interest rates were extremely low; (ii) their injuries were caused by the intentional misconduct of the officers of the Bankruptcy Court while acting under the color of law; (iii) a favorable decision will redress the financial hardship resulting from the illegal judgments against Lankfords and will serve as a testimony to the foundational truth that no one is above the law and <u>everyone</u> is accountable for their actions.

## BACKGROUND AND RELEVANT FACTS

10.     In 2004, Lankfords opened their self-directed IRAs with Zia Trust in Albuquerque, New Mexico.  One of Zia's recommended investments was Vaughan Company, Realtors ("**VCR**").  Lankfords never met Douglas Vaughan, owner of VCR, but he sent newspaper clippings and promotional brochures, along with testimonials of other VCR investors, demonstrating that he was a pillar of the community.  In good faith, Lankfords made direct investments jointly and each of them made individual IRA investments with VCR, paying Zia Trust almost $20,000 in management fees before Lankfords were informed that VCR had declared bankruptcy and was, in fact, a *Ponzi* scheme.

11.     Lankfords have committed no crime, but were admittedly naïve.  Over their six years of investing, they did receive $63,277.64 more than they had invested with VCR, making them "net-winners."  Judith A. Wagner, the Chapter 11 Trustee of the bankruptcy estate of VCR ("**Trustee**") recovered funds from Zia Trust for the benefit of the estate that exceeded the management fees Lankfords paid to Zia Trust.  In addition, she knew Lankfords had paid several years' of federal income taxes on their VCR profits that were not then-refundable.  So, the Trustee was aware Lankfords no longer had the cash they received from VCR, but she never asked for the correct net-winnings amount, or even a fair and reasonable settlement.  The Trustee was demanding that Lankfords return to her $67,313.88, which was $4,036.24 more than their net-winnings, as verified by Lankfords using both the Trustee's initial disclosure documentation and their tax returns.

12.     Lankfords' research and efforts to correct the amount of their net-winnings exposed a greedy and corrupt Trustee who was taking advantage of scared, confused senior citizens who had just lost their retirement savings in a *Ponzi* scheme.  With little money left for

6

legal counsel, net-winners were at the Trustee's mercy, and in Lankfords' case, she overstated

numbers and failed to respond to their repeated requests for documentation to support her Claim.

13.     Lankfords, *pro se*, did not have an attorney to validate the Trustee's claims, so

they personally did their own due diligence by double-checking math, source data and verifying

statements made by the Trustee and the Court.  The Trustee could have just admitted that she had

made a mistake and corrected it; but instead, she claimed that she was using some other

documents, which were not included in her initial disclosure.  The Trustee referenced those other

documents in her motions and responses, but still failed to produce them and the Court defended

her, claiming Lankfords' didn't ask for them in discovery.

### Undenied and Unrebutted Material Facts of Obstruction of Justice, Lack of Due Process, Collusion and Fraud on the Court

14.     On February 21, 2012, the Trustee filed her *Complaint*. (Adv Proc No 12-01139).

The Trustee was demanding that Lankfords immediately return to her for the benefit of all

VCR's defrauded creditors, the $67,313.88 they received in excess of their original investments,

their "net-winnings," having used the cash-in, cash-out basis of accounting.  (Doc. 1).[6]

15.     On September 10, 2012, in Lankfords' *Answer to the Complaint* (Doc. 22), they

informed the Trustee that her calculations for their net-winnings were overstated by $7700.00,

according to the VCR CYMA vendor ledgers.[7]  However, using the amortization schedules for

their investment loans in the calculations, Lankfords discovered that the VCR CYMA vendor

ledgers were incomplete and the overstatement was actually $4036.24.

16.     Lankfords' based their net-winnings calculations on the initial disclosure data

provided by the Trustee, resulting in a total that matched the amounts reported on their tax

---

[6] All Document numbers in this Complaint refer to filings in the Bankruptcy Court of the District of New Mexico, Adv. Proc. 12-1139-j, unless otherwise noted.
[7] A commercial accounting software program.

returns, so they were only asking the Trustee to produce the documents that supported her overstated amount of her claim.  However, instead of producing supporting documentation, the Trustee pushed for summary judgments[8] for an amount to which she had no right, one that exceeded Lankfords' net-winnings.

17.     For a year and a half, Lankfords asked for, and still demanded, the documents supporting the Trustee's overstated net-winnings to be produced before they would agree on the net-winnings amount, but she would not provide them.  So, a genuine dispute as to the material facts existed and Lankfords made it clear in the August 6, 2013 final pre-trial hearing, that the documents provided by the Trustee, in her initial disclosure, were inadequate and did not support her claims. (Doc 132, p.9 lines 5-10).  Mr. Lankford also explained that he suspected that the Trustee's numbers were bogus[9] and that there were no documents to support her overstated claims for Lankfords' net-winnings, as corroborated by their tax returns.  (Doc. 132, p.4, lines 6-24).  Evidenced by the transcript of the final pre-trial hearing, the presiding judge, the Honorable Robert H. Jacobvitz, Chief Judge of the United States Bankruptcy Court in the District of New Mexico ("the **Judge**"), repeatedly stated that the Trustee should explain her calculations and provide her source documents that were used to calculate Lankfords' net-winnings, so they could prepare a defense and arguments for trial. (Doc. 132, p.10, 11, 12 & 13).

> (Page 10, line 18)  "I'm just trying to make sure that both parties have the source data they need to present whatever case they want to present."
> (Page 11, line 21)  "I think that's right but I guess I also would like for the Trustee to provide whatever documents the Trustee has to Lankfords showing how the Trustee came up with a hundred and forty-four thousand, 976."

---

[8] Fed. R. Civ. Pr. Rule 56 (a) MOTION FOR SUMMARY JUDGMENT "… The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion…"

[9] *Greiner*, 152 F.3d at 789. "… fraud upon the court include[s] the fabrication of evidence by counsel ..." *Oxxford Clothes*, 127 F.3d at 578. "… committed "fraud on the court" by … insert[ion of] **bogus documents** into the record."

(Page 12, line 24)  "I just want to <u>make sure that, Mr. Lankford, you have the --</u> <u>the source documentation.</u>"

(Page 13, line 4)  "So I mean, if you don't understand how the Trustee came up with a hundred and forty four thousand 976 instead of a hundred and thirty-seven thousand 270, then I'd like the Trustee to <u>explain to you how</u> <u>they came up with that number.</u>"

(Page 13, line 16)  "I just want <u>to make sure the parties have the -- the source</u> <u>information</u> from which -- they can make their respective arguments."

(Page13, line 22)  "And the Trustee may have already produced its documents to Lankfords. But what I'm directing the Trustee to do is to do an analysis so you can determine why you think there's a discrepancy between the hundred and forty-four thousand 976 on the one hand and a hundred thirty-seven thousand 270. And then to identify, to the extent the Trustee can reasonably do so, what the Trustee believes accounts for that difference."

18.    On August 7, 2013, the very next day after the hearing, the Clerk's Minutes of that August 6th hearing were filed.  However, these Minutes of the final pre-trial hearing did <u>not</u> <u>require the production of source documents,</u> contrary to the transcript which clearly shows the Judges' specific intent that, in preparation for their upcoming trial, Lankfords would have the source documents supporting the Trustee's overstated net-winnings.  (Doc. 42).

19.    On August 8, 2013, Judge Jacobvitz used the falsified Clerk's Minutes of Lankfords' final pre-trial hearing to produce his *Amounts Order*, wherein he stated,

"WHEREFORE, <u>IN ACCORDANCE with the Court's ruling at the final</u> <u>hearing</u> (emphasis added), IT IS HEREBY ORDERED: On or before August 26, 2013, the Trustee shall provide to the Defendants [Lankfords] a written explanation as to how the Trustee determined the amount of the transfers at issue in this adversary proceeding total $144,976 instead of the $137,270 asserted by Defendants [Lankfords], <u>with</u> <u>reference to specific documents and items or entries within such documents that the</u> <u>Trustee has already provided to the Defendants</u> [Lankfords]." (Doc. 43, p.2).

20.    This *Amounts Order* was <u>not</u> "IN ACCORDANCE with the Court's ruling at the final hearing."  The Minutes stated that the Trustee was required to explain her calculations with references only to documents <u>already provided</u> to Lankfords.  However, in the transcript, Lankfords clearly objected to the documentation "already provided" by the Trustee, claiming it was incomplete and did not support the Trustee's overstated numbers that she claimed were the

"net-winnings." (Doc 132, p.9 lines 5-10).  So the Minutes and the *Amounts Order* were not only fabricated, but defied logic, requiring the Trustee to explain how she calculated the net-winnings, using only the incomplete documentation that she had already provided, which Lankfords had clearly indicated did not support or justify her overstated net-winnings amount.

21.     In the hearing, the Judge required the Trustee to explain and provide her source documents to Lankfords showing "…how the Trustee came up with a hundred and forty four thousand 976…" (Doc. 132, pg 13, line 4).  In contrast, the Clerk's Minutes state, "…the Trustee [is] to provide to the defendants a description or identification of particular items in the documents already produced to the defendants that the Trustee relied upon in support of the amounts of transfers..." (Doc. 42).  Similarly, the resulting *Amounts Order* issued the following day required the Trustee to only explain her calculations "…with reference to specific documents and items or entries within such documents that the Trustee has already provided to the Defendants [Lankfords]." (Doc. 43, p.2).  The Minutes and the *Amounts Order* do <u>not</u> reflect the words or the specific intent of the Judge's statements quoted from the transcript above (Paragraph 17), that the Trustee was to produce her source documents and explain her calculations.

22.     The Judge's *Amounts Order* excluded the requirement for the Trustee to produce the source documents as support for her calculations, which made any explanation produced without those supporting documents, nothing more than a cover-up of a fraudulent scheme to obtain more from the Lankfords than was due, concluding that the only purpose served by the *Amounts Order* was to allow the Trustee to withhold material evidence from Lankfords that she claimed was used in calculating the net-winnings amount in her *Complaint*.  The Minutes and the *Amounts Order* were evidence of collusion and a nefarious attempt to obstruct justice and due process in order to protect officers of the court who had committed criminal acts.

23.     In attendance at the final pre-trial hearing were the Trustee's attorneys, Edward

Mazel, mentee of Judge Jacobvitz, and James A. Askew, both of Askew & Mazel, LLC, Judge

Jacobvitz, law clerk Patti Hennessy and David and Lee Ann Lankford.  It is uncertain who

prepared the Minutes, but it is reasonable to assume that everyone present in that hearing knew,

or should have known, of the falsity of those Minutes and the intent of the *Amounts Order*.

24.     If the *Amounts Order* had accurately communicated the Judge's stated intent in

the hearing, the Trustee would have been required to produce her source documents, which

would have proven that there was no evidence to support her $4036.24 overstatement of

Lankfords' net-winnings and would have exposed the collusion by officers of the court to take

more than was legally due.  The correct amount of Lankfords' net-winnings would have been

established, as well as a starting point for settlement negotiations, putting them in a good

position for a fair and reasonable settlement;[10] and this case would have been closed by

September 2013.  The Judge abused his discretion and demonstrated his bias when he colluded

with the Trustee, defied logic and evidence by allowing known fictitious Minutes of the pre-trial

hearing and issuing his fraudulent *Amounts Order* that caused irreparable damage to Lankfords'

case. [11]  The Trustee and her attorneys purposefully propagated both falsities. (Doc. 70, p.3).

25.     All officers of the court were aware of the falsity of the Clerk's Minutes of the

final pre-trial hearing, as well as the falsity of the *Amounts Order* resulting from those Minutes,

but never questioned or reported either one, as required morally, ethically, by oath and by law.

The officers of the court knew, or should have known, that the *Amounts Order* was a false

---

[10] DNMLR-Civ 16.2(b).  "In every bankruptcy adversary proceeding filed in Bankruptcy Court, the parties must participate in a settlement conference with members of the bankruptcy facilitation panel unless otherwise ordered by the Bankruptcy Court."

[11] *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) ("fraud upon the court is an unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense."

document, yet they continued to reference it and repeat its fictitious statements at every opportunity,[12] taking no remedial action against it, thereby conspiring [13] to commit fraud on the court, collusion, obstruction of justice and deprivation of Lankfords' right to due process. (Docs. 68, 70, 76, 92, 94, 96).

26.     On August 26, 2013, the Trustee's attorneys delivered to Lankfords, via email, the "Calculation Explanation"[14] in accordance with the *Amounts Order*.  However, it was a one-page document with no title, no date, no authorship, no signature, no authentication, no verification, no identification, was not self-authenticating, so was inadmissible according to Federal Rules of Evidence 901(a).[15]  (Doc. 91, Exhibit C).

27.     Fed. R. Civ. P. 11(a) states, "The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention."  Even after Lankfords objected to the document, due to its deficiencies, the unsigned Calculation Explanation was neither stricken nor corrected, but was successfully submitted as evidence by the Trustee.  The Calculation Explanation was nothing more than intentional fraudulent statements of material facts submitted to the Court with incomplete and fabricated supporting documentation which failed to satisfy the requirement of the *Amounts Order* to explain how the calculations were done; but without the supporting source documents, it had no credibility and

---

[12] 18 U.S. Code § 1001 - Statements or entries generally
(a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—
(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; (2) makes any materially false, fictitious, or fraudulent statement or representation; or (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;  shall be ...
[13] 42 U.S. Code § 1985 (3).  "It is a conspiracy, when two or more officers of the court were involved and working together, under the color of law."
[14] 18 U.S. Code § 1621(2)  " ... in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true; is guilty of perjury.
[15] Federal Rules of Evidence Rule 901(a) In General. To satisfy the requirement of authenticating or identifying an item of evidence, the <u>proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.</u>

served no legal purpose. It contained false data, math errors, fraudulent accounting and referenced documents that had no origin. It is unreasonable to think that these officers of the court did not know this document was false; yet it was attached to the Trustee's *Motions for Summary Judgments* ("**MSJs**") as Exhibit "A" (Doc. 71-2) and referenced in their motions, pleadings and opinions, in spite of Lankfords' objections and questioning its integrity. (Doc. 91).

28.     In her Calculation Explanation, the Trustee, effectively, admitted that she had overstated Lankfords' net-winnings of $67,313.88, so she reduced it by $4036.24, and then claimed that the net-winnings were adjusted accordingly, but never documented the actual amount of the adjusted net-winnings. (Doc. 71-1).

29.     The Judge stated, "The Court also warned both parties that it would only consider facts set forth in a separate statement of material facts and supported by admissible evidence." (Doc. 99, p.3). Lankfords repeatedly objected to the Trustee's Calculation Explanation as it was a deficient and fraudulent response to the Judge's *Amounts Order* that referenced fraudulent and fabricated documents, yet it was accepted by the Court as admissible evidence. In the *Supplemental Response to MSJs* (Doc. 91, p.2), Lankfords, by using and referencing attached exhibits, explained the details of fraud, bias and corruption in the Court, and requested answers to issues arising from the Calculation Explanation that caused the overstated net-winnings amount, such as: "How two payments, from the 2004 amortization schedules, of $690.41 and $611.51 can equal $4135.89?" The Trustee/CPA did not answer, but instead claimed that,

> "Defendants' [Lankfords'] proposed exhibits are wholly inadmissible pursuant to the Federal Rules of Evidence... Therefore, the proposed exhibits are inadmissible and should not be considered by the Court." (Doc. 94, p.5).

30.     Ironically, ALL of Lankfords' exhibits deemed inadmissible by Judge Jacobvitz were, in fact, either his own or the Trustee's own, recorded documents, merely used as

references by Lankfords to explain and document the fraud committed by the Trustee. (Doc. 91: Exhibit A=Trustee's Demand Letter, Exhibit B= the Judge's *Amounts Order*, Exhibit C=Trustee's Calculation Explanation, Exhibit D= Trustee's Affidavit, Exhibit E=Trustee's "Lankfords' Summary Sheet." Yet all were deemed inadmissible.[16] This is an example of a biased judge, as well as the appearance of a corruptly influenced Court. The Judge was either biased or complicit with the Trustee and should have recused himself from this case, as due process requires.[17]

31.    The Trustee never addressed the issues or responded to Lankfords' Statement of Material Facts, yet Judge Jacobvitz protected the Trustee and her attorneys by not requiring them to respond. Summary judgments were granted without those answers from the Trustee or the Judge having considered her silence as an admission to Lankfords' Material Facts.

32.    In Doc. 99, footnote 11, Judge Jacobvitz claimed, (emphasis added)

"The Court considered the arguments set forth in Lankfords' separate statement of material facts, but it did not deem such facts established. For the most part, the facts were not supported by admissible evidence. Even if the Court considered them, however, they would not have changed the result here." [18]

33.    Since the introduction of mathematics and according to all known bases of accounting, it is an established fact that $690.41 plus $611.51 does not equal $4135.89. This could not have been a simple addition "error" made by a CPA; it was judicial fraud which was identified and documented by Lankfords. The Trustee blamed the documents she withheld and the second-hand data she had to use in her calculations for Lankfords' overstated net-winnings and the Judge excused her unsubstantiated documents and math as mere "errors." (Doc. 70, p.7).

---

[16] *Peters v. Kiff*, 407, U.S. 493, 502 (1972). "Moreover, even if there is no showing of actual bias in the tribunal, this Court has held that **due process is denied by circumstances that create the likelihood or the appearance of bias.**"

[17] Should a judge not disqualify himself, then the judge is violation of the Due Process Clause of the U.S. Constitution. United States v. Sciuto, 521 F.2d 842, 845 (7th Cir. 1996) (**"The right to a tribunal free from bias or prejudice is based, not on section 144, but on the Due Process Clause.**").

[18] 7 *Moore's Federal Practice*, 2d ed., p. 512, 60. The 7th Circuit further stated "a decision produced by fraud upon the court is not in essence a decision at all, and never becomes final."

34.     The Judge also claimed that, "For the most part, the facts were not supported by

admissible evidence." However, that is only true because the Judge and the Trustee were

personally responsible for deeming Lankfords' supporting exhibits as <u>inadmissible</u>.  Since bias in

the court is considered to be fraud on the court and if "fraud vitiates everything," Lankfords'

evidence of fraud on the court would not have been deemed "inadmissible evidence" and most

definitely <u>would</u> "have changed the result here." Even though the Judge deemed Lankfords'

referenced exhibits inadmissible, their Material Facts remained relevant, undisputed and

unanswered.  In order to have deemed Lankfords' exhibits inadmissible, the Judge and the Trustee

first had to examine them, so they were fully aware that all of the exhibits were documents that

they, themselves, authored and had already been submitted and entered into the Court record

without contest.  Lankfords' Exhibit C was the Trustee's Calculation Explanation, which was

attached as her Exhibit A in support of the MSJs, yet Lankfords were arbitrarily denied to even

<u>reference</u> it in their own defense.[19]  The biased Court accepted the Trustee's claim that Lankfords'

exhibits were "wholly inadmissible" in a conspiracy to conceal collusion and cover up fraud on the

court that Lankfords had identified using the Court's own, recorded documents.[20]

35.     Lankfords, living in Phoenix, Arizona, were preparing for their trial which was

scheduled for May 28, 2014 in Albuquerque, New Mexico, where they had planned to expose a

scheme to cover-up corruption in the Bankruptcy Court.  However, summary judgments for

$67,404.39 were granted and the Order was issued on May 27, 2014 at 16:13:02, just 47 minutes

---

[19] **The Supreme Court has ruled and has reaffirmed the principle that "justice must satisfy the appearance of justice",** Levine v. United States, 362 U.S. 610, 80 S.Ct. 1038 (1960), citing Offutt v. Untied States, 348 U.S. 11, 14, 75 S.Ct. 11,13 (1954).

[20] 42 U.S. Code § 1985 (3)- Conspiracy to interfere with civil rights. Depriving persons of rights or privileges - If two or more persons in any State conspire for the purpose of depriving, either directly or indirectly, any person of equal privileges and immunities under the laws in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

before close of business the day before the scheduled trial, and for an amount that exceeded

Lankfords' net-winnings by $4,127.75. This was another nefarious act to obstruct justice, deny

due process and silence Lankfords in order to cover-up evidence of corruption and collusion by

officers of the court that would have been exposed in a public trial.

36.     The summary judgments were illegally granted for an excessive amount and did

not conform to the net-winnings explanation given by Mr. Edward Mazel, the Trustee's attorney:

> "...the Trustee is using a cash-in, cash-out basis of accounting. So, if over the life
> of **ten investments**, somebody actually **put $100,000 of cash into** the Vaughan
> Company, Realtors and **got back $150,000 of cash**, the Trustee is calling the
> **$50,000 net-winnings**."(Doc.132 at 9, lines 23-25 at 10, line 1-6). (emphasis added)

Yet, this was <u>not</u> the basis of accounting the Trustee used in determining the amount for

Lankfords' summary judgments, although she and the Judge intentionally and falsely still called

the resulting amount, the Lankfords' "net-winnings," knowing it was a misrepresentation of facts.

37.     Based on the above explanation of the net-winnings using a "cash-in, cash-out basis

of accounting," Lankfords had only **three investments**. They actually **put $283,975 of cash into**

the Vaughan Company, Realtors and **got back $347,252.64 of cash.** The documented amount of

**$63,277.64 is the true net-winnings,** as confirmed by the Trustee's Lankford Summary Sheet,

prepared 03/23/2012 (Doc. 114, p. 21) and corrected in the Calculation Explanation on 08/26/2013.

(Doc. 114, p. 22). However, the Trustee was demanding the overstated amount of **$67,313.88** that

she claimed was the Lankfords' fictitious profits in excess of their investment with VCR. (Doc. 1).

38.     The summary judgments for $67,404.39 exceeded even the original demanded,

overstated amount and was <u>not</u> Lankfords' net-winnings as defined by the Trustee's attorney.

After the Trustee admitted to the "errors" causing the earlier overstatement of $4036.24, she

claimed it had been corrected and adjusted accordingly, but there was no actual amount stated.

Later, in her MSJs, the Trustee again falsely overstated the net-winnings, this time by $4127.75.

16

So the amount of the genuine dispute had only <u>increased</u>. This time there were no errors, so the new excuse for the arbitrarily redefined net-winnings and accounting practices was that the Lankfords did not ask for Ms. Lankford's IRA loss to be included in the calculations. This shows intent on the part of the Trustee to obtain more than the net-winnings and should have justified vitiating the summary judgments. However, when Lankfords filed a motion to correct the summary judgments amount (Doc. 107), it was denied. (Doc. 111). The Judge stated,

> "Because the Trustee only sought to recover Net-Winnings on the summary judgments and because Ms. Lankford individually was a net loser, the summary judgment papers did not address her investments at all." (Doc. 116, p. 6, Ftnt 5)

39.    Lankfords had three investments, one suffered a loss and two were profitable. The Judge's statement above is in direct conflict with the basis of accounting for net-winners, as explained in the final pre-trial hearing. (Paragraph 36). There is no legal basis of accounting that could calculate **NET**-winnings without including losing investments, regardless of what the summary judgment papers addressed, as Lankfords had already identified those papers as being fraudulent with an unauthenticated and fraudulent "Exhibit A" as support. The Trustee, her attorneys and the Judge made illogical, nefarious excuses for their actions, and were colluding together to obtain more than just the net-winnings from Lankfords. The officers of the court changed the basis of accounting for calculating Lankfords' net-winnings, as punishment for questioning the Trustee's math, integrity and legal practices. It would be difficult to honestly portray these actions as anything other than collusion and a conspiracy to obstruct justice, deny due process and protect officers of the court who committed fraud on the court.

40.    The fraudulent characteristics of the Calculation Explanation,[21] threatened its credibility. So, the Trustee recalculated the net-winnings for her MSJs using an arbitrarily altered

---

[21] 18 U.S. Code § 157 - Bankruptcy fraud, A person who, having devised or intending to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so...(2)files a

formula without informing Lankfords.  This new formula excluded Lankfords' losing investment and claimed that all parties agreed on the amount of the profits of the other two investments, calling it net-winnings instead of the more correct term, gross-winnings.  The Trustee knew that this new amount was also overstated but made no effort to correct the MSJs, still calling them "net-winnings" and showing her persistent, deliberate intent to take more from Lankfords than to which she had the right, in violation of Fed. R. Civ. Pr. Rule 56 (a).  Using the math of cash-in, cash-out proves that there was never an agreement on the net-winnings amount between the parties as claimed by the Trustee and the Judge. (Doc. 99, p. 10).  Therefore, the judgments, themselves, were illegally granted and were materially false statements, because they were knowingly and deliberately calculated incorrectly using an arbitrary basis of accounting. [22]

41.     The Judge pointed out that on August 6, 2013, he ordered the Trustee to explain her calculations, which resulted in her revising Lankfords' net-winnings amount and adjusting the net-winnings accordingly. (Docs. 81, 99, 110, 116).  The Judge suppressed the fact that Lankfords had proven the Calculation Explanation to be a fraudulent, unsigned, unauthenticated, inadmissible document which contained math errors, unsubstantiated statements and referenced false documents covering up the facts that exposed fraud on the court. (Doc. 69, 74, 75, 77, 91, 103,106, 114, 118).  Lankfords made extensive efforts to explain, document and demonstrate the fraud contained in the Trustee's Calculation Explanation.[23] (Doc. 67, 69, 74, 75, 77, 91, 94, 103, 114, 118, 149, 152).  The Judge dismissed Lankfords' claims of fraudulent accounting and numerous math errors, calling them "bald allegations" (Doc. 81, p.5), without requiring a corrected revision of the

---

document in a proceeding under title 11; (3)makes a false or fraudulent representation, claim, or promise concerning or in relation to a proceeding under title 11,...

[22] *Duncan v. Missouri, 152 U.S. 377, 382 (1894)* "Due process of law and the equal protection of the laws are secured if the laws operate on all alike, and do not subject the individual to an **arbitrary exercise of the powers of government.**"

[23] "Unsupported contentions of material fact are not sufficient on motion for summary judgment, but rather, material facts must be supported by affidavits and other testimony and documents that would be admissible in evidence at trial." CINCO ENTERPRISES, INS. v BENSO, Okla., 890 P.2d 866 (1994).

document. In spite of Lankfords' warnings of fraud on the court, Judge Jacobvitz's *Opinion* and judgments were based on the Trustee's fraudulent Calculation Explanation, making the false statement that it explained the $4037.24 overstatement, revised the amount as a result of additional financial documents, and that she had "adjusted the amount sought accordingly." (Doc. 99, p.3). Apparently, the adjustment was never made because the summary judgments overstated the net-winnings again, but this time by $4126.75. Those assertions were known by the Judge and the Trustee to be false. If she had made adjustments "accordingly," the summary judgments would have been for the correct amount.

42.     Judge Jacobvitz abused his discretion[24] by allowing the Trustee to submit the fraudulent Calculation Explanation to justify summary judgments and not requiring her to sign and revise it by correcting the math errors identified by Lankfords. (Doc. 91, p. 2). Although, had she corrected her Calculation Explanation, it could no longer be used to excuse the overstated net-winnings amount, but would have exposed the Trustee's fraudulent accounting. Instead, the Judge suppressed[25] the fact that the document was fraudulent, and allowed the Trustee to devise a new basis for accounting wherein she could add the profits and ignore the losses "to independently calculate the Net-Winnings" (Doc.99, p.10), even though this new method of accounting for so-called net-winnings was contrary to the Trustee's attorney's explanation of how net-winnings were calculated. The Judge failed to reject the Calculation Explanation but continued to reference it knowing $4036.24 of <u>identified</u> math errors had <u>not</u> been corrected and that it contained numerous misrepresentations of the facts. (Doc. 81, 99, 100, 116).

---

[24] Definition: Abuse of discretion. <u>Failure to take into proper consideration the facts</u> and law relating to a particular matter; an Arbitrary or unreasonable departure from precedent and settled judicial custom.
Source: http://legal-dictionary.thefreedictionary.com
[25] Fraud includes the suppression of the truth, as well as the presentation of false information (In re *Witt* (1191) 145 Ill.2d 380, 583 N.E. 2d 526, 531, 164 Ill. Dec. 610). See also In re *Frederick Edward Strufe*, Disciplinary case no. 93 SH 100

43.     In spite of all the evidence, Judge Jacobvitz stated in his *Memorandum Opinion* (Doc. 99, p.11), "In addition, there has been no indication that the Trustee or her counsel acted with any nefarious or dishonest motive during the course of this case." The Judge was either deceived by, or complicit with other officers of the court. In either case, the proceedings had no appearance of justice[26] and displayed extreme bias.

44.     Lankfords' *Motion to Vacate the Summary Judgments and go to Trial,* (Doc. 114, 149), included even more details and exhibits that clearly demonstrated fraud on the court. The Judge claimed that the allegations were identical arguments the Court had considered and rejected on other occasions and were "without merit." (Docs. 116, 119, 153). The Judge continually failed to adhere to the requirements of due process wherein "the tribunal is to prepare written findings of facts and reasons for its decisions." The Judge's ruling or *Opinion* have no statements or explanations that address many of Lankfords' allegations of fraud on the court, thereby violating the Due Process Clause and their 7th Amendment right to a trial.

45.     In his *Memorandum Opinion and Order Denying Motion to Vacate Summary Judgments and Go to Trial*, the Judge stated, "In her summary judgment papers, the Trustee limited the requested relief to recovery of the fictitious profits paid to Lankfords in excess of their initial investments in the Ponzi scheme ("Net Winnings")." (Doc. 116, p.3 ). The Judge defined net-winnings as being based on profits, which required the inclusion of losses, such as Ms. Lankford's IRA, to calculate net-winnings. The Judge intentionally allowed and defended the Trustee's decision to exclude Ms. Lankford's IRA loss knowing it was a required element of any calculation for profits. The continuous attempts to overstate the amount of the net-winnings was the result of a nefarious and dishonest scheme to obstruct justice.

---

[26] The Supreme Court has ruled and has reaffirmed the principle that **"justice must satisfy the appearance of justice"**, Levine v. United States, 362 U.S. 610, 80 S.Ct. 1038 (1960), citing Offutt v. Untied States, 348 U.S. 11, 14, 75 S.Ct. 11,13 (1954).

46.     Lankfords appealed their Bankruptcy case to the District Court of New Mexico assuming that their *prima facie* evidence would be fairly evaluated, (DC Case 1:14-cv-01153-RB-CG Doc. 27).   However, the only evidence that was referenced in that *Opinion* and ruling was the same fabricated evidence produced by the Trustee in the Bankruptcy proceedings and the appeal was denied as being "without merit."   The *Opinions* and rulings failed to mention fraud on the court, which was the documented reason for Lankfords' *Motion* (Doc. 114) and the cause of action in their appeal.

47.     The Courts obstructed justice by covering-up the undisputed evidence and not addressing critical elements of the Judges' decisions.  This is a failure to adhere to the due process requirements:[27] (i) an unbiased tribunal, or the appearance of such,[28] (ii) a decision based exclusively on the evidence presented, (iii) the tribunal is to prepare a record of the evidence presented, (iv) the tribunal is to prepare written findings of facts and reasons for its decisions.

48.     Due to the Courts' lack of strict adherence to these requirements, they ignored and even suppressed certain evidence that they chose not to address (i.e. fraud on the court, failure to consider all of the evidence, bias, discrepancy of the transcript v. Minutes and the *Amounts Order*, denial of exhibits).   The Courts' negligence of adherence to due process allowed collusion to cover-up evidence of fraud on the court which deprived Lankfords of their right to a fair and unbiased trial.[29]  The Judge has shown bias[30] in his decisions and rulings by knowingly

---

[27] 18 U.S. Code § 1519 - Destruction, alteration, or falsification of records in Federal investigations and bankruptcy- Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

[28] *Peters v. Kiff*, 407, U.S. 493, 502 (1972). "Moreover, even if there is no showing of actual bias in the tribunal, this Court has held that due process is denied by circumstances that create the likelihood or the appearance of bias."

[29] Section 1983 establishes a cause of action for any person who has been deprived of rights secured by the Constitution or laws of the United States by a person acting under color of state law. A plaintiff must prove that (1) the conduct was committed by a person acting under color of state law and (2) that as a result of this conduct

relying on and repeating the Trustee's distorted and dishonest facts while completely disregarding Lankfords' unrebutted *prima facie* case.  In reality, the lack of integrity and impartiality of the Bankruptcy and District Courts have been so disrupted that they couldn't perform their tasks without bias or prejudice; therefore, the critical, material facts of Lankfords' case were never truly adjudicated by any Court.

49.     In an effort to justify granting summary judgments against Lankfords, the actions taken by officers of the Bankruptcy Court were, in reality, fraud on the court.  One such act is proven by identifying the **five separate elements of fraud** (on the court):

50.     **(1) False Statement:** In her Calculation Explanation, the Trustee admitted to overstating the original demand of $67,313.88.  The Judge falsely stated,

> "With respect to Lankfords' assertions that the Trustee initially overstated the amount paid to them by $4037.24, the Trustee admits as much and has <u>adjusted her calculations accordingly</u> [$63,276.64].  The Motions for Summary Judgments reflect the <u>updated calculations</u>, and the court did not rely on the overstated amount in connection with this ruling. Instead, it relied on numbers to which all parties agree (i.e. the amounts invested by the Defendants and the amounts transferred by VCR) <u>to independently calculate the Net-Winnings</u> [$67,404.39]. Thus, to the extent to which the Trustee's calculations were initially incorrect, such error has not tainted this ruling."[31] (Doc. 99, p. 10).

51.     **(2) Knowledge:** The Trustee and the Judge realized that the fraudulent Calculation Explanation would not hold up under scrutiny and that summary judgments could not be justified based on the fraudulent calculations. They were also aware that their new basis

---

plaintiff was deprived of rights, privileges or immunities secured by the Constitution or the laws of the United States.

[30] Liljeberg v. Health Services Acquisition Corp.,486 U.S. 847, 108 S.Ct. 2194 (1988) (**what matters is not the reality of bias or prejudice but its appearance**); United States v. Balistrieri, 779 F.2d 1191 (7th Cir. 1985) (Section 455(a) **"is directed against the appearance of partiality, whether or not the judge is actually biased."**) ("28 U.S.C. §455(a), is not intended to protect litigants from actual bias in their judge but rather to promote public confidence in the impartiality of the judicial process.").

[31] Whenever any officer of the court commits fraud during a proceeding in the court, he/she is engaged in "fraud upon the court". In *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir.1985), the court stated "Fraud upon the court is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury. ... It is where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function --- thus where the impartial functions of the court have been directly corrupted."

for accounting calculated only the winnings, so they referenced it differently as "updated calculations" and "independently calculate the Net-Winnings." The Trustee constructively established in the Calculation Explanation that if the Lankfords' net-winnings amount had been "adjusted accordingly," it was $63,276.64, even though that amount was never documented by the Trustee. Lankfords had repeatedly stated the correct amount of their net-winnings and the Trustee, her attorneys and the Judge all had knowledge of the overstatement.

52.    **(3) Intent:** The Trustee covered-up the Calculation Explanation without ever correcting the math "errors" and developed an alternative scheme to justify summary judgments. She calculated the <u>winnings</u> for Lankfords' two profitable investments, to which the parties agreed. However, the Trustee deliberately failed to include Ms. Lankford's IRA loss of $4126.75, as calculated and documented on the Trustee's own Lankford Summary Sheet. (Doc. 114, p. 21). Thereby, the Trustee was able "to independently calculate the Net-Winnings" as $67,404.39 and cover-up the illegal application of summary judgments based on the **<u>Gross</u>**-Winnings, which overstated Lankfords' Net-Winnings by $4126.75. In doing so, the Trustee violated her own basis of accounting for net-winnings (cash-in, cash-out) that included all three of Lankfords' investments. By arbitrarily altering the calculation for Lankfords' net-winnings, as explained by the Judge (Paragraph 50), the new "independently" calculated net-winnings were a nefarious attempt to include the profits of two of Lankfords' investments while knowingly, and with the specific intent, to disregard the loss in their third investment, misrepresenting the resulting amount as the <u>net</u>-winnings from their investments with VCR. The Judge was aware that the Trustee was corruptly influencing the Court to deliberately obtain by fraud even more than the amount that she had previously admitted was overstated, while covering-up the collusion by the officers of the court.

23

53.    **(4) Reliance:**  The Bankruptcy Court relied on the integrity of the Trustee and her attorneys, while the officers of the court relied on Lankfords' ignorance of the law, as *pro se*, when summary judgments were illegally granted and due process was denied.  The Trustee violated existing statutes, assuming that Lankfords would not notice or object and the Judge relied on the Trustee's experience and reputation, to the point of showing bias by accepting her statements and misrepresentations of the facts without question, while disregarding Lankfords' *prima facie* evidence.  Relying on the integrity of the actions and statements made by the Trustee and her attorneys, the US Trustee sent a Synopsis of Lankfords' adversary proceeding to the DOJ that contained numerous misrepresentations of the facts and known false statements that covered up fraud on the court.  On June 29, 2016 Director Clifford White of the DOJ relied on the integrity of the US Trustee and forwarded the fraudulent Synopsis to Congressman Trent Franks, Chairman of the Subcommittee on the Constitution and Civil Justice, who relied on the integrity of the DOJ and also considered the Synopsis to be true and correct, then forwarded it to Lankfords and explained that according to the DOJ, they had received due process.  Lankfords were relying on the integrity of the Department of Justice and Congress, but instead, were victims of a biased and corrupt judicial system that was more concerned about protecting itself than administering due process in the pursuit of justice.  Reliance justifiably assumes integrity, which was absent here.[32]

54.    **(5) Injury:** The Courts and the DOJ have been severely injured by standing behind, enforcing and defending corruption, obstruction of justice, lack of due process, collusion, bias, fraud on the court and the summary judgments that were illegally granted against Lankfords.  The Court was so deceived by the Trustee's false information that it deprived

---

[32] *Kerwit Med. Prods., Inc. v. N. & H. Instruments, Inc.*, 616 F.2d 833, 837 (11th Cir. 1980). "Fraud on the court should embrace only that species of fraud which does or attempts to, subvert the integrity of the court itself, <u>or is a fraud perpetrated by officers of the court</u>."

Lankfords of Constitutional due process, allowing the officers of the court to unjustly prosecute Lankfords without a trial and making a mockery of justice and the American legal system, for the distinct purpose of protecting themselves.  Congress was given false information intentionally propagated by the Court and the DOJ after Lankfords had warned the Attorney General, the U.S. Attorney and the FBI of this corruption in August, 2015.  In the Bankruptcy Court, where this corruption was not even concealed or disguised, officers of the court are above the law and can commit crimes to suppress and cover-up evidence if necessary to win a judgment.  The combination of immunity per *Barton*, with corruption in the court, makes the pursuit of justice for Lankfords unattainable and it is not the justice that many have fought and died to defend.  The Courts, DOJ and America have all been injured, as there can be no respect for or public confidence in a court that lacks the integrity to hold its own officers accountable for their illegal actions, at the expense of justice for others.

## SUMMARY

55.     Lankfords have presented unrebutted evidence of collusion and fraud on the court, committed by officers of the Bankruptcy Court and have established that the biased Court granted summary judgments that were illegal per Fed. R. Civ. Pr. Rule 56 (a).  There was a genuine dispute of material facts between the parties and a cover-up of Lankfords unrebutted *prima facie* evidence of obstruction of justice, fraud on the court and denial of due process that was suppressed and concealed from the scrutiny of a public trial.

56.     This Complaint is about a corrupt court that has proven it is above the law that it claims to uphold.  Officers of the Bankruptcy Court know that if they falsify court documents, fabricate evidence, misrepresent the facts and commit numerous acts of fraud on the court, in the name of justice, that even the Tenth Circuit Court of Appeals (Case #16-2221) will uphold *Barton*

to protect them from any prosecution or accountability for their illegal actions. However, their immunity does not excuse the damages caused by their denial of due process and their failure to follow the rule of law. When officers of the court, knowingly conspire against a person, causing him to be harmed or to be "deprived of exercising any right or privilege of a citizen of the United States," the responsibility lies with the Court that allows the injustice. If the officers of the court cannot be charged for their illegal actions, then the Federal Government and the Courts must be held responsible for their lack of attention to evidence and their total disregard for due process that Lankfords have experienced. A court that will use *Barton* to protect and defend its officers who violate existing statutes and commit fraud on the court is biased if it does not, at least, acknowledge the damages, pain and suffering that the fraud and violations have caused to the defendants; in this case, the Lankfords. Regardless, even with immunity, fraud on the court <u>was</u> committed and fraud still vitiates everything, which includes judgments.

57.     Lankfords have a *prima facie* case supported by existing statutes and common law. They have signed personal affidavits swearing that everything they have said and done is true and correct to the best of their knowledge. This Complaint has merit, Lankfords' have standing and the Constitution guarantees due process, so it should not be difficult to adjudicate considering that the officers of the court, after five years of litigation, have never denied, defended or offered rebuttal evidence to Lankfords' allegations of fraud on the court and the conspiracy which they perpetrated.

58.     Lankfords are requesting an immediate evidentiary hearing to evaluate the evidence, merits of the case and the statutes violated that allowed obstruction of justice, collusion, bias and corruptly influenced the Courts' decisions and rulings that have been ignored for over five years. The unjust and overstated summary judgments have become a financial

26

hardship, so Lankfords are demanding a jury trial, per Rule 38(a) and (b), and seeking compensatory and punitive damages from the United States Department of Justice to be determined by a jury.  The right of trial by jury is declared by the Seventh Amendment.

**WHEREFORE**, the Lankfords pray for judgment in their favor as follows: (i) the Court to vacate the summary judgments against them, under Federal Rules of Civil Procedure, Title VII, Rule 60, Relief from a Judgment or Order.  Grounds warranting reconsideration under Rule 60(d)(3) provide that a judgment may be set aside for fraud on the court; (ii) fair and reasonable compensation from the United States Department of Justice for over five years of unnecessary harassment and judicial fraud perpetrated on them; (iii) punitive damages from the United States Department of Justice and, (iv) Lankfords be awarded such other and further relief as the jury deems appropriate and just under the circumstances.

Respectfully submitted,

By: _____
David Lankford

By: _____
Lee Ann Lankford
4243 E. Montgomery Rd.
Cave Creek, AZ  85331
480-216-8757

Exhibit A: David Lankford Affidavit
Exhibit B: Lee Ann Lankford Affidavit

EXHIBIT A

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DAVID LANKFORD and
LEE ANN LANKFORD, *pro se*
     Plaintiffs,

                               USDC Case No. _____

v.

UNITED STATES DEPARTMENT OF JUSTICE
     Defendants.

## AFFIDAVIT OF DAVID LANKFORD

STATE OF ARIZONA
COUNTY OF MARICOPA

    1.    The facts stated in this Affidavit are known to me to be true and of my own knowledge.  I am over the age of 18 and competent to testify to such facts and would so testify if I appeared in court at a trial in the above-captioned case, in which this affidavit is to be filed.

    2.    I and my wife, Lee Ann Lankford, are retired entrepreneurs.  I have had no education or legal training in the law, or the practice thereof.  Therefore, my wife and I, as "the Lankfords" are representing ourselves *pro se* in this case, as we have done in the preceding District of New Mexico Bankruptcy Adversary Proceeding Case No. 12-1139-j and its appeal in the District Court of New Mexico Appellate Case No. 1:14-cv-01153 RB/CG,  District Court Complaint 1:15-cv-01013-JCH-LF,  Judicial Complaint to Tenth Circuit Court Nos. 10-16-90025 thru 10-16-90027, and the Tenth Circuit Court of Appeals USCA No. 16-2221.

    3.    All statements I have made during the course of the above referenced cases, to the best of my knowledge, were true and correct.

4.      All documents or excerpts I referenced or submitted to the court as either

pleadings or exhibits in the course of the above numbered cases, to the best of my knowledge,

were true and correct copies of those documents or excerpts, as recorded in the record.

5.      Any illustrations that I created or any annotations or mathematical calculations I

added to true and correct copies of recorded documents and exhibits were inserted merely for

clarification and were accurate, true and correct.

I swear and declare under penalty of perjury that the foregoing is true and correct.

Executed on the 19th day of June, 2017.

David Lankford

SUBSCRIBED, SWORN TO, AND ACKNOWLEDGED before me this 19th day of June, 2017
by David Lankford.

I, the undersigned Notary Public, do hereby affirm that David Lankford personally appeared
before me on the 19th day of June 2017, and signed the above Affidavit as his free and voluntary
act and deed.

Debra Anderson
Notary Public - Arizona
Maricopa County
My Commission Expires
July 19, 2018

Notary Public

2

EXHIBIT B

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

DAVID LANKFORD and
LEE ANN LANKFORD, *pro se*
     Plaintiffs,

                                USDC Case No._____

v.

  UNITED STATES DEPARTMENT OF JUSTICE
     Defendants.

## AFFIDAVIT OF LEE ANN LANKFORD

STATE OF ARIZONA
COUNTY OF MARICOPA

    1.    The facts stated in this Affidavit are known to me to be true and of my own knowledge.  I am over the age of 18 and competent to testify to such facts and would so testify if I appeared in court at a trial in the above-captioned case, in which this affidavit is to be filed.

    2.    I and my husband, David Lankford, are retired entrepreneurs.  I earned an undergraduate degree in Mathematics, but have had no education or legal training in the law, or the practice thereof.  Therefore, my husband and I, as "the Lankfords" are representing ourselves *pro se* in this case, as we have done in the preceding District of New Mexico Bankruptcy Adversary Proceeding Case No. 12-1139-j and its appeal in the District Court of New Mexico Appellate Case No. 1:14-cv-01153 RB/CG.  District Court Complaint 1:15-cv-01013-JCH-LF, Judicial Complaint to Tenth Circuit Court Nos. 10-16-90025 thru 10-16-90027, and the Tenth Circuit Court of Appeals USCA No. 16-2221.

    3.    All statements I have made during the course of the above referenced cases, to the best of my knowledge, were true and correct.

1

4.    All documents or excerpts I referenced or submitted to the court as either

pleadings or exhibits in the course of the above numbered cases, to the best of my knowledge,

were true and correct copies of those documents or excerpts, as recorded in the record.

5.    Any illustrations that I created or any annotations or mathematical calculations I

added to true and correct copies of recorded documents and exhibits were inserted merely for

clarification and were accurate, true and correct.

I swear and declare under penalty of perjury that the foregoing is true and correct.

Executed on the 19th day of June, 2017.

_Lee ann lankford_
Lee Ann Lankford

SUBSCRIBED, SWORN TO, AND ACKNOWLEDGED before me this 19th day of June 2017,
by Lee Ann Lankford.

I, the undersigned Notary Public, do hereby affirm that Lee Ann Lankford personally appeared
before me on the 19th day of June 2017, and signed the above Affidavit as his free and voluntary
act and deed.

Debra Anderson
Notary Public - Arizona
Maricopa County
My Commission Expires
July 19, 2018

_____
Notary Public

2



3c USA

LANKFORD
42443 E MONTGOMERY RD
CAVE CREEK, AZ 85331

RECEIVED
At Albuquerque NM

JUN 21 2017

MATTHEW J. DYKMAN
CLERK

CLERK OF THE COURT

US DISTRICT COURT

333 LOMAS BLVD NW

ALBUQUERQUE, N M

87102